| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | MEMORANDUM, ORDER<br>& JUDGMENT |
|---|---|
| In re: ZYPREXA PRODUCTS LIABILITY LITIGATION | 04-MD-1596 |
| ADRIENNE HARVARD,<br><br>Plaintiff,<br><br>– against –<br><br>ELI LILLY & COMPANY,<br><br>Defendant. | 06-CV-5335 |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 1 6 2010 ★
BROOKLYN OFFICE

**JACK B. WEINSTEIN, Senior United States District Judge:**

Defendant Eli Lilly & Company ("Lilly") moves for summary judgment against plaintiff Adrienne Harvard. Lilly moves separately to exclude the proposed expert testimony of John L. Gueriguian, M.D. and John A. Kirby, M.D., and to exclude the proposed expert testimony of Paul A. Fitzgerald, M.D. or, in the alternative, for a *Daubert* hearing regarding the admissibility of Dr. Fitzgerald's testimony.

Plaintiff commenced this action against Lilly in the United States District Court for the District of New Jersey on June 21, 2006. The case was transferred to the Eastern District of New York pursuant to an order of the Judicial Panel on Multidistrict Litigation.

By letter of May 5, 2010, plaintiff's counsel's partner informed the court that plaintiff's counsel had fallen seriously ill, and was unable to continue the representation. An extension of time was granted for plaintiff to retain replacement counsel, and to respond to Lilly's summary judgment motion. By order of August 5, 2010, plaintiff was notified that if no response to Lilly's motion was submitted by August 23, 2010, the motion would be decided based upon

1

Lilly's motion papers. It appears that plaintiff has thus far been unable to find new counsel. She has not filed her response.

Based upon review of Lilly's motion papers and supporting documents, for the reasons below defendant's motions for summary judgment and to exclude the testimony of plaintiff's proposed experts are denied.

## General Background

The present case is part of a massive and highly complex multidistrict litigation that has included claims by individual Zyprexa users, state attorneys general, third-party payors, and other entities alleging physical or financial injury. Some 30,000 cases have been brought against Lilly by individual plaintiffs suffering from serious psychiatric problems who were treated with Zyprexa. Like the present plaintiff, they principally allege that Zyprexa caused deleterious side effects of excessive weight gain, hyperglycemia, and diabetes; that Lilly misled them and their physicians about the likelihood of these side effects; and that, had they or their attending physicians been aware of the risks, they would not have taken Zyprexa. The court has previously detailed the procedural history and factual background of this multidistrict litigation. *See, e.g., Mississippi v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 671 F. Supp. 2d 397 (E.D.N.Y. 2009); *Blume v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, Nos. 04-MD-1596, 06-CV-2782, 2009 WL 3596982 (E.D.N.Y. Oct. 20, 2009).

Tens of thousands of individual claims have already been disposed of under the court's supervision. In view of the large number of cases recently filed in this national Zyprexa litigation and the numerous substantially similar motions for summary judgment that have been decided, a short, summary order disposing of such motions is desirable except where unusual

circumstances require special analysis. Repeated summary judgment motions and decisions have established a pattern applicable over a wide range of state laws. *See, e.g., Souther v. Eli Lilly & Co.*, 489 F. Supp. 2d 230 (E.D.N.Y. 2007) (applying Pennsylvania law and granting summary judgment with respect to one plaintiff on statute of limitations; applying Florida and North Carolina law and denying summary judgment with respect to three other plaintiffs); *Singer v. Eli Lilly & Co.*, No. 06-CV-1338, 2009 WL 1404978 (E.D.N.Y. May 19, 2009) (applying Pennsylvania law and granting summary judgment on learned intermediary doctrine and lack of causation); *Clark v. Eli Lilly & Co.*, No. 06-CV-1600, 2009 WL 1514427 (E.D.N.Y. May 29, 2009) (applying Pennsylvania law and granting summary judgment on learned intermediary doctrine and lack of causation); *Ortenzio v. Eli Lilly & Co.*, No. 07-CV-987, 2009 WL 1514628 (E.D.N.Y. June 1, 2009) (applying West Virginia law and granting summary judgment on lack of causation); *Neal v. Eli Lilly & Co.*, No. 06-CV-2782, 2009 WL 1852001 (E.D.N.Y. June 22, 2009) (applying California law and granting summary judgment on learned intermediary doctrine and lack of causation); *Morrison v. Eli Lilly & Co.*, No. 08-CV-307, 2009 WL 1851062 (E.D.N.Y. June 22, 2009) (applying Missouri law and granting summary judgment on statute of limitations and learned intermediary doctrine); *Leggett v. Eli Lilly & Co.*, No. 06-CV-5115, 2009 WL 1850970 (E.D.N.Y. June 22, 2009) (applying California law and granting summary judgment on statute of limitations and learned intermediary doctrine); *Misouria v. Eli Lilly & Co.*, No. 06-CV-2782, 2009 WL 1851999 (E.D.N.Y. June 24, 2009) (applying California law and granting summary judgment on learned intermediary doctrine); *Dean v. Eli Lilly & Co.*, No. 07-CV-4505, 2009 WL 2004540 (E.D.N.Y. July 1, 2009) (applying Florida law and granting summary judgment on learned intermediary doctrine); *Washington v. Eli Lilly & Co.*, No. 06-

CV-2592, 2009 WL 2163118 (E.D.N.Y. July 13, 2009) (applying Michigan law and granting summary judgment on learned intermediary doctrine and lack of causation); *Smith v. Eli Lilly & Co.*, 653 F. Supp. 2d 181 (E.D.N.Y. 2009) (applying Arkansas law and granting summary judgment on learned intermediary doctrine); *Pruett v. Eli Lilly & Co.*, No. 07-CV-1931, 2009 WL 2245068 (E.D.N.Y. July 22, 2009) (applying Alabama law and denying summary judgment); *Carey v. Eli Lilly & Co.*, No. 06-CV-2798, 2009 WL 2487305 (E.D.N.Y. July 27, 2009) (applying Virginia law and granting summary judgment on learned intermediary doctrine); *Fuller v. Eli Lilly & Co.*, No. 06-CV-2782, 2009 WL 2485829 (E.D.N.Y. July 31, 2009) (applying California law and granting summary judgment on statute of limitations); *Head v. Eli Lilly & Co.*, 649 F.Supp.2d 18 (E.D.N.Y. 2009) (applying Arizona law and granting summary judgment on learned intermediary doctrine); *Earl v. Eli Lilly & Co.*, 688 F.Supp.2d 130 (E.D.N.Y. 2009) (applying Alabama law and denying summary judgment); *Belcher v. Eli Lilly & Co.*, No. 06-CV-2782, 2009 WL 3597447 (E.D.N.Y. Oct. 16, 2009) (applying California law and granting summary judgment on statute of limitations); *Quirarte v. Eli Lilly & Co.*, No. 07-CV-1161, 2009 WL 3597194 (E.D.N.Y. Oct. 16, 2009) (applying Illinois law and granting summary judgment on learned intermediary doctrine); *Folse v. Eli Lilly & Co.*, No. 04-CV-1612, 2009 WL 3596526 (E.D.N.Y. Oct. 16, 2009) (applying Louisiana law and granting summary judgment on learned intermediary doctrine); *Blume v. Eli Lilly & Co.*, No. 06-CV-2782, 2009 WL 3596982 (E.D.N.Y. Oct. 20, 2009) (applying California law and granting summary judgment on learned intermediary doctrine); *Guillen v. Eli Lilly & Co.*, No. 06-CV-2782, 2009 WL 5062114 (E.D.N.Y. Dec. 10, 2009) (applying California law and granting summary judgment on statute of limitations, learned intermediary doctrine, and other grounds); *Gove v. Eli Lilly & Co.*, No. 06-

CV-2592, 2009 WL 5062109 (E.D.N.Y. Dec. 10, 2009) (applying Arizona law and granting summary judgment on statute of limitations, learned intermediary doctrine, and lack of causation); *Treuchel v. Eli Lilly & Co.*, No. 08-CV-01176, 2009 WL 5216930 (E.D.N.Y. Dec. 21, 2009) (Applying Minnesota law and granting summary judgment on learned intermediary doctrine); *Gurovitsch v. Eli Lilly & Co.*, No. 08-CV-1408, 2009 WL 5125636 (E.D.N.Y. Dec. 29, 2009) (applying Minnesota law and denying summary judgment); *Brown v. Eli Lilly & Co.*, 08-CV-3249, 2010 WL 99391 (E.D.N.Y. Jan. 8, 2010) (applying Mississippi law and granting summary judgment on lack of causation); *Trimble v. Eli Lilly & Co.*, No. 06-CV-3457, 2010 WL 348276 (E.D.N.Y. Jan. 22, 2010) (applying Illinois law and granting summary judgment on learned intermediary doctrine); *Abitang v. Eli Lilly & Co.*, No. 06-CV-3456, 2010 WL 331793 (E.D.N.Y. Jan. 28, 2010) (applying Illinois law and granting summary judgment on statute of limitations); *Asbury v. Eli Lilly & Co.*, No. 06-CV-1593, 2010 WL 1292268 (E.D.N.Y. March 30, 2010) (applying Kansas law and granting summary judgment on statute of limitations); *Dixon v. Eli Lilly & Co.*, No. 09-CV-1012, 2010 WL 2039010 (E.D.N.Y. May 19, 2010) (applying New York law and granting summary judgment on statute of limitations); *Carpentier v. Eli Lilly & Co.*, No. 07-CV-1458 (E.D.N.Y. May 28, 2010) (applying Oregon law and granting summary judgment on statute of limitations).

**Facts**

Plaintiff was diagnosed with recent-onset diabetes on February 24, 2004. *See* Decl. of Franklin T. Pyle III ("Pyle Decl."), Ex. 4 at HARVARDA_MMH_0004-05 (Morristown Memorial Hosp. Discharge Summ.). She had first taken Zyprexa about three weeks earlier, after she was prescribed a medication called Symbyax on February 5, 2004. *See* Pyle Decl., Ex. 5 at

5

HARVARDA_BLANKS_0122 (Medication Records). Symbyax contains both the active ingredient in Prozac and the active ingredient in Zyprexa. Pyle Decl., Ex. 11 at 1 (Symbyax label of Dec. 30, 2003).

Prior to taking Symbyax, Ms. Harvard had been taking a combination of Prozac, for depression, and Risperdal, for some psychotic symptoms. *See* Pyle Decl., Ex. 6 at 77, 93 (Dep. of Susan G. Blank, M.D.). To spare Ms. Harvard the expense of paying for her medication, an effort was made by her physician to provide her with free samples provided by the pharmaceutical companies. *Id.* at 92-94. The decision was made to switch Ms. Harvard from Prozac and Risperdal to Symbyax because Symbyax samples were available, and her physician did not have "any other way to keep her on Prozac with samples." *Id.* at 92-93. It was felt that she "had done well on Prozac," and that "Zyprexa could replace the Risperdal, so that it would be as similar to what she had been on before as possible within the constraints of being able to give her samples." *Id.* at 93-04.

The Symbyax label at that time carried the following warning:

### WARNINGS

**Hyperglycemia and Diabetes Mellitus** – Hyperglycemia, in some cases extreme and associated with ketoacidosis or hypersomolar coma or death has been reported in patients treated with atypical antipsychotics, including olanzapine [Zyprexa] alone, as well as olanzapine taken concomitantly with fluoxetine [Prozac]. Assessment of the relationship between atypical antipsychotic use and glucose abnormalities is complicated by the possibility of an increased background risk of diabetes mellitus in patients with schizophrenia and the increasing incidence of diabetes mellitus in the general population. Given these confounders, the relationship between atypical antipsychotic use and hyperglycemia-related adverse events is not completely understood. However, epidemiological studies suggest an increased risk of treatment-emergent hyperglycemia-related adverse events in patients treated

> with the atypical antipsychotics. Precise risk estimates for hyperglycemia-related adverse events in patients treated with atypical antipsychotics are not available.
>
> Patients with an established diagnosis of diabetes mellitus who are started on atypical antipsychotics should be monitored regularly for worsening of glucose control. Patients with risk factors for diabetes mellitus (e.g., obesity, family history of diabetes) who are starting treatment with atypical antipsychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment. Any patient treated with atypical antipsychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical antipsychotics should undergo fasting blood glucose testing. . . .

Pyle Decl., Ex. 11 at 7. This language was substantially identical to warning language that was added to the Zyprexa label in September 2003. *See, e.g., Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 489 F. Supp. 2d 230, 248-49 (E.D.N.Y. 2007).

On March 1, 2004, Lilly sent a "Dear Doctor" letter to physicians in the United States informing them of the diabetes-related warning language added to the Zyprexa label. The court has previously determined that March 1, 2004 would be considered the latest possible date on which members of the medical community knew or should have known about Zyprexa's obesity- and diabetes-related risks to patient health. *See, e.g., Souther v. Eli Lilly & Co.*, 489 F. Supp. 2d at 278. Nevertheless, a fact-specific analysis is necessary for each case to determine whether a given physician knew of the potential causal connection between Zyprexa and adverse health effects prior to March 1, 2004. *See, e.g.,* Appendices A-D of *Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, Nos. 04-MD-1596, 06-CV-1729, Docket Entries Nos. 88-1 to 88-4 (E.D.N.Y. June 11, 2007) (including relevant depositions demonstrating doctors' awareness of Zyprexa's association with patient weight gain).

In November 2003, the American Diabetes Association, American Psychiatric Association, American College of Clinical Endocrinologists, and the North American Association for the Study of Obesity convened a consensus development conference (the "ADA consensus conference") on the subject of the association between antipsychotic drugs and diabetes. An eight-member panel heard presentations from fourteen experts drawn from the fields of psychiatry, obesity, and diabetes, FDA representatives, and atypical antipsychotic drug manufacturers. The panel reviewed the relevant peer-reviewed English language scientific articles.

The ADA consensus conference concluded that Zyprexa and Clozaril posed an increased risk of diabetes as compared to other atypical antipsychotic drugs. The consensus statement produced by the conference declared that these relative risks as well as advantages of the drugs for individual patients in a heterogeneous population "should . . . influence drug choice." In part, its report concluded:

> There is considerable evidence, particularly in patients with schizophrenia, that treatment with [atypical antipsychotics] can cause a rapid increase in body weight in the first few months of therapy that may not reach a plateau even after 1 year of treatment. There is, however, considerable variability in weight gain among the various [atypical antipsychotics] . . . .
>
> ***
>
> Clozapine [Clozaril] and olanzapine [Zyprexa] . . . produce the greatest weight gain.
>
> ***
>
> Despite limitations in study design, the data consistently show an increased risk for diabetes in patients treated with clozapine [Clozaril] or olanzapine [Zyprexa] compared with patients not receiving treatment with [first generation antipsychotics] or with

8

other [atypical antipsychotics]. The risk in patients taking risperidone and quetiapine is less clear; some studies show an increased risk for diabetes, while others do not. The two most recently approved [atypical antipsychotics], aripiprazole and ziprasidone, have relatively limited epidemiological data, but available clinical trial experience with these drugs has not shown an increased risk for diabetes.

\*\*\*

[T]he risks of obesity, diabetes, and dyslipidemia have considerable clinical implications in this patient population and should . . . influence drug choice.

Even for those medications associated with an increased risk of metabolic side effects, the benefit to specific patients could outweigh the potential risks. For example, clozapine [Clozaril] has unique benefits for treatment-refractory patients and those at significant risk for suicidal behavior. Since treatment response in many psychiatric conditions is heterogeneous and unpredictable, physicians and patients can benefit from the availability of a broad array of different therapeutic agents.

\*\*\*

These three adverse conditions [obesity, diabetes, and dyslipidemia] are closely linked, and their prevalence appears to differ depending on the [atypical antipsychotic] used. Clozapine [Clozaril] and olanzapine [Zyprexa] are associated with the greatest weight gain and highest occurrence of diabetes and dyslipidemia. Risperidone and quetiapine appear to have intermediate effects. Aripiprazole and ziprasidone are associated with little or no significant weight gain, diabetes, or dyslipidemia, although they have not been used as extensively as other agents.

The choice of [atypical antipsychotic] for a specific patient depends on many factors. The likelihood of developing severe metabolic disease should also be an important consideration.

American Diabetes Association, et al., Consensus Development Conference on Antipsychotic Drugs and Obesity and Diabetes, 27 Diabetes Care 596, 596-97 (Feb. 2004).

Plaintiff's prescribing physician, Dr. Susan Blank, testified at her deposition that she monitored medical journal articles relating to drugs she regularly prescribed, including Zyprexa,

and that she reviewed the Symbyax package insert before prescribing it to Ms. Harvard. *See* Pyle Decl., Ex. 6 at 22-24, 116. She stated that she took into account the potential diabetes-related risks in her prescription decision:

> Q: And based on everything that you understood from journal articles, the package insert, your own clinical experience, did you come to the conclusion that it made sense for you to try the Symbyax-Zyprexa-Prozac combination on Miss Harvard?
>
> A: Yes.
>
> . . .
>
> Q: And notwithstanding that potential side effect [of raising blood sugar], in February of '04, you nevertheless viewed the benefits to Ms. Harvard as outweighing that potential risk?
>
> A: Yes.

*Id.* at 94, 99. Medical records kept by Dr. Blank indicated that the risk that Zyprexa could cause elevated blood sugar was discussed with Ms. Harvard at the time of the prescription. *Id.* at 98-99.

In the period leading up to Dr. Blank's February 2004 prescription decision, she communicated frequently about Zyprexa with a Lilly sales representative whom she remembered by name, Matt Pellecchia. *Id.* at 43. Notwithstanding the September 2003 Zyprexa label change, and related developments like the ADA consensus conference, Dr. Blank testified that Mr. Pellecchia on several occasions argued that "Zyprexa was not causative of [ ] diabetes":

> Q: I wonder if you could take a look at—it's on page 8 of the call note [prepared by Mr. Pellicchia of a sales call with Dr. Blank] . . ., this is dated September 25, 2003.
> And here it says "Really had to clear up diabetes perceptions so went through diabetes sell sheets and verbatim."

> Do you remember having discussions with Matt [Pellecchia] about diabetes in this time period?
>
> A: Yes.
>
> Q: Okay.
> What do you remember about those discussions?
>
> A: I remember him telling me that the Zyprexa was not causative of the diabetes; and that if someone's blood sugar went up while they were on Zyprexa, they were going to become diabetic anyway and that it was—maybe it's too strong a word to say coincidental, but that was his implication.

*Id.* at 58-59.

> A: I recall him [Mr. Pellecchia] on more than one occasion telling me that the Zyprexa had nothing to do with the diabetes and also that all the atypicals were equally causative of this problem and that the person was destined to be diabetic anyway or that kind of stuff—
>
> Q: Words to that—
>
> A: —and that was more than once . . .

*Id.* at 61-62.

> Q: Do you recall the discussion of—between yourself and Mr. Pellecchia regarding what he talks about as clearing up diabetes perceptions?
>
> A: My recollection—I don't remember specifics—is that I undoubtedly said to him, I'm very concerned about it causing people's blood sugars to go up and he was telling me that it doesn't really cause that and that these were people who were destined to have diabetes anyway or something along those lines.

*Id.* at 128-29.

Dr. Blank had a conversation with Ms. Harvard after her diabetes diagnosis, in which Ms. Harvard asked whether Zyprexa may have had a role in causing the onset of diabetes. Dr. Blank recalled discounting that possibility, based upon information received from Mr. Pellecchia:

> Q: Can you look over [a notation made by Dr. Blank dated September 30, 2004]?
>
> A: Yeah, I see at the bottom. It says, patient asked if she could have been diabetic if never took Zyprexa, I think it's what it said. Told her she probably would have developed it anyway at some point.
>
> Q: Why did you say that?
>
> A: Probably based on what Matt [Pellecchia] was telling me: That most patients who develop—I can actually remember that—most patients who develop high blood sugar who are on the medicine were predisposed to it. And, of course, she had the family history.

*Id.* at 110-11.

Dr. Blank's testimony regarding the weight she gave the information received from Mr. Pellecchia suggests that she may have been influenced by Lilly's sales message in her prescribing decisions:

> Q: Doctor, when we took a break, you were telling me that Matt [Pellecchia] had a couple of different conversations with you concerning the relationship between Zyprexa and blood glucose changes.
> What I didn't ask you was, did his comments influence the way that you prescribed Zyprexa?
>
> (PAUSE)
>
> A: It's very hard to say. I certainly—I didn't take what he said as absolute truth, but probably took it into consideration.

*Id.* at 63-64.

12

> Q: I mean, is it fair to say that you would not pay much attention to statements that a sales rep made that were not backed up with clinical evidence?
>
> A: Yes.
>
> Q: Okay.
> And do you remember anything being presented to you that purported to show that people with diabetes risk factors would get diabetes anyway and so that was a reason not to be concerned about it?
>
> A: I'm sure whatever he showed me must have supported that in some fashion, but I don't recall the details.
>
> Q: Okay.
> And in September 2003, did you adopt this view as your own and allow it to influence how you used Zyprexa versus Risperdal versus Seroquel?
>
> A: *Well, I was probably convinced enough by what I saw to feel that if the efficacy was warranted, I would use it.*
>
> Q: Well, okay. I don't mean to nitpick here, but convinced enough by what he was saying generally about the product or—
>
> A: He must—it must have been the data he showed me. I can't imagine I would have believed it based on—I wouldn't have believed it just based on what he said completely.

*Id.* at 137-38 (emphasis added).

## Applicable Law

New Jersey state law governs this action. *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)); *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008) (New Jersey courts "apply the Second Restatement's most significant relationship standard in tort cases. Under that standard, the law of the state of the

13

injury is applicable unless another state has a more significant relationship to the parties and issues").

New Jersey follows the learned intermediary doctrine, according to which a pharmaceutical company's duty to warn runs to the prescribing physician rather than to the patient taking a prescription drug. *See* N.J. Stat. § 2A:58C-4 ("An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided . . ., [ ] in the case of prescription drugs, taking into account the characteristics of, and the ordinary knowledge common to, the prescribing physician."); *see also, e.g., Banner v. Hoffmann-La Roche Inc.*, 891 A.2d 1229, 1236 (N.J. Super. Ct. App. Div. 2006) ("Our statute incorporates the 'learned intermediary' doctrine under which a pharmaceutical manufacturer generally fulfills its duty to warn the ultimate user of its prescription drug . . . when it supplies physicians with adequate information about a drug's dangerous propensities."). *Cf. Allgood v. GlaxoSmithKline PLC*, No. 06-3506, 2008 WL 483574, at *3 (E.D. La. Feb. 20, 2008) (granting summary judgment for defendant because plaintiff had failed to show (1) that defendant did not adequately warn the physician of a risk associated with the drug that was not otherwise known to the physician and (2) that the "failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury"), *aff'd sub nom. Allgood v. SmithKline Beecham Corp.*, No. 08-30329, 2009 WL 6465285, 314 Fed. App'x 701 (5th Cir. Mar. 13, 2009).

## Analysis

The court examined Lilly's memorandum of law and other documents submitted in support of its motion for summary judgment. Though Lilly has strong legal and factual defenses

to plaintiff's claims, based on the available record the possibility remains that a reasonable jury could find for the plaintiff. Material issues of fact are genuinely disputed.

Summary judgment is not warranted on the basis of the learned intermediary doctrine. The timeline of events—including the content of the Symbyax label warning and the proliferation of information about Zyprexa's risks in late 2003 and early 2004—favors Lilly's position that the prescribing physician was likely aware of the risk of diabetes at the time Symbyax was prescribed to Ms. Harvard. Dr. Blank's testimony, however, raises questions about the extent to which she was influenced by information supplied by Lilly's sales representative. While Dr. Blank noted that she would not have unquestioningly accepted Mr. Pellecchia's statements, it was admitted that she took his assertions into consideration. It is noteworthy that as late as September 2004, Dr. Blank made statements to Ms. Harvard about the possible role of Zyprexa in causing her diabetes that appear to have been more consistent with the sales representative's positions than with the emerging medical consensus. Based on this testimony, it cannot be ruled out that a reasonable jury reviewing the evidence at trial could find that, had Lilly's conduct been different, Dr. Blank's prescription decision might have changed.

Lilly asserts that summary judgment is warranted based on plaintiff's failure to pursue a claim under New Jersey's Product Liability Act, N.J. Stat. §§ 2A:58C-1 *et. seq.*, rather than under New Jersey common law. It is asserted that the Product Liability Act provides the sole method of prosecuting a product liability action in New Jersey. Assuming that this is accurate, no reason has been identified why plaintiff should not be permitted to amend her complaint to state a claim under the Product Liability Act. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave" to amend a complaint "when justice

so requires." Leave to amend is normally only denied in cases of undue delay, bad faith, prejudice to the opposing party, or futility. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182 (1962); *Mackensworth v. S.S. Am. Merchant,* 28 F.3d 246, 251 (2d Cir.1994). No prejudice or other reason to deny leave to amend has been identified. Summary judgment on this basis is not warranted.

Lilly moves separately to exclude the proposed expert testimony of John L. Gueriguian, M.D. and John A. Kirby, M.D., and to exclude the proposed expert testimony of Paul A. Fitzgerald, M.D. or, in the alternative, for a *Daubert* hearing regarding the admissibility of Dr. Fitzgerald's testimony.

Doctors Gueriguian and Kirby have distinguished records as treating physicians and scholars in fields relevant to their opinions. Their proposed findings are in the mainstream of professional theory. They meet all requirements of Rules 702 and 703 of the Federal Rules of Evidence. They can be helpful to the jury. The motion to exclude their testimony is denied.

Dr. Fitzgerald is fully qualified as an expert in the field in which he is proposed as a witness. He has previously been qualified as an expert by this court in similar individual Zyprexa cases. *See, e.g., Clark v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.),* Nos. 04-MD-1596, 06-CV-1600, 07-CV-987, 2009 WL 1322286 (E.D.N.Y. May 12, 2009). He has applied scientifically accepted theories and methods to the facts, producing an opinion which the jury could reasonably accept as scientifically valid. He meets all requirements of Rules 702 and 703. The motion to exclude Dr. Fitzgerald's testimony or, in the alternative, for a *Daubert* hearing, is denied.

## Conclusion

Defendant's motion for summary judgment against the plaintiff is denied. Defendant's motions regarding plaintiff's proposed experts, Drs. Gueriguian, Kirby, and Fitzgerald, are denied.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: August 16, 2010
Brooklyn, New York